UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aniya Brown,<br><br>    Plaintiff,<br><br> v.<br><br>Commissioner of Social Security,<br><br>    Defendant. | No. 1:24-cv-01418-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF**<br><br>**(Doc 13, 15)** |

  **I.**  **Introduction**

 Plaintiff Aniya Brown appeals the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

  **II.**  **Factual and Procedural Background**

 On January 31, 2022, Plaintiff applied for SSI benefits. The agency denied the application initially on November 30, 2022, and on reconsideration on March 25, 2023. AR 85, 107. The ALJ held a hearing on November 7, 2023. AR 39–70. The ALJ issued an unfavorable decision on February 23, 2024. AR 14–38. The Appeals Council denied review on October 18, 2024 (AR 1-6) and this appeal followed.

  **III.**  **The Disability Standard**

 Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits. Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion. *See*

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. Docs. 7, 8.

1

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  The Ninth Circuit has explained that "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears

the burden of proof at steps one through four, the burden shifts to the commissioner at step five to provide evidence that the Plaintiff is capable of performing other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the SSI application date of January 31, 2022. AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: attention deficit-hyperactivity disorder (ADHD), social anxiety disorder, and borderline intellectual functioning. Id. At step two the ALJ concluded that the claimant also had non-severe impairments, including the following: asthma, environmental and seasonal allergies, vitamin D deficiency, and iron deficiency anemia. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23–24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the following RFC:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: she can occasionally interact with coworkers and supervisors, and she can have no interaction with the public except superficial. She should not perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She can handle occasional changes in a routine work setting.

AR 31–32.

At step four, the ALJ concluded that Plaintiff had no past relevant work. AR 32. At step five, in reliance on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: marker, routing clerk, and hand packager. AR 33. Accordingly, the ALJ concluded that Plaintiff was not disabled since the SSI application date of January 31, 2022. AR 34.

### V. Issue Presented

Plaintiff asserts the following claim of error: the ALJ improperly evaluated the examining medical source opinion of the consultative psychologist, Barrie Jason Roer, Psy.D.

A.     **Applicable Law**

Before proceeding to steps four and five, the ALJ must determine the claimant's residual functional capacity which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The Residual Functional Capacity must consider all of the claimant's impairments, whether or not the impairments are severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate the pre-existing hierarchy of medical opinions. The revised regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### B.   Factual Background

Plaintiff was diagnosed with ADHD and anxiety. When she was in the tenth grade in August 2021, she was prescribed Vyvanse 20mg due to trouble focusing in school. AR 443. She was also prescribed Zoloft 50mg. AR 398. Plaintiff's ADHD symptoms were well-controlled as of April 2022. AR 399. The record reflects that Plaintiff demonstrated good medication compliance as of August 2022. Her Zoloft dosage was increased to 100mg. AR 377. Anxiety and depression were noted amidst the Covid pandemic. AR 377. Despite psychiatry notes that she was doing well in school, her October 2022 transcript reflected a GPA of 0.70. AR 574. She was compliant with medication despite side effects of feeling ill, experiencing anxiety and depression. AR 529–30. In February 2023, Claimant's Vyvanse dose was decreased to 10mg due to side effects. AR 517.

### C.   Analysis

#### 1.   Summary of Dr. Roer's Examination and Opinion

Dr. Roer conducted a consultative psychological exam on November 8, 2022, arranged by the agency. AR 459–46. Dr. Roer noted lack of concentration. AR 459. Plaintiff's cognitive testing scores were as follows: **1-** borderline range for verbal comprehension; **2-** extremely low range for perceptual reasoning; **3-** borderline range for working memory and full-scale IQ; **4-**

borderline or extremely low range for immediate memory and visual memory. AR 462.

Dr. Roer opined Plaintiff would have <u>moderate</u> difficulty with simple and complex tasks. Dr. Roer further opined that Plaintiff would have <u>moderate</u> limitations in the following areas: **1-** maintaining attendance for a 40-hour workweek; **2-** completing a normal workday or workweek without interruptions; **3-** accepting instructions from supervisors; **4-** interacting with coworkers, supervisors and the public; **5-** dealing with the usual stressors encountered in a competitive work environment; **6-** performing detailed and complex tasks; **7-** working consistently without additional supervision (464–66). Dr. Roer further opined that she would need additional time, prompts and supervision to ensure consistent task completion due to distractibility and difficulty listening to rules. Id.

### 2.  **Analysis**

The ALJ discussed Dr. Roer's opinion as follows:

> On November 8, 2022, consultative psychologist Barrie Roer, Psy.D. completed a psychological evaluation of the claimant (Exhibit 3F). The claimant's chief allegations were anxiety and anxiety attacks when in [public]. These symptoms began [after COVID-19 isolation] . . . The claimant denied undergoing any mental health treatment, and she denied taking psychotropic medication. She did not have a history of psychiatric hospitalization. She completed the 10th grade, and she denied ever being placed in special education. She was able to care for her personal needs, prepare meals, and do light household chores. She had no significant difficulties with shopping, self-care, or independent living. She was able to make change at the store. She described a typical day as, "Go to school. Do my work. Go home. Help my grandma out." Upon evaluation, the claimant was friendly and cooperative. Her eye contact was good. The claimant was alert and oriented to person, place, time, and situation. Her mood was good, and her affect was full range. Her speech was normal, and her thought process was linear. Her thought content was normal without hallucinations, delusions, suicidal ideation, or homicidal ideation. Her attention and concentration were adequate, but she appeared to have a lack of focus and concentration despite her enthusiasm to participate in psychometric testing. Her abstract thinking was adequate. She could identify basic similarities and explain a proverb. Her insight and judgment were adequate. On the WAIS-IV, she achieved a full-scale IQ of 71, in the range of borderline intellectual functioning. Her results on the WMS-IV were consistent with scores on the intelligence test and showed only slight memory deficit. Dr. Roer diagnosed the claimant with social anxiety disorder, and he opined that she had no limitation in performing simple and repetitive tasks (Exhibit 3F, pp. 6-7). She was moderately

> limited in performing detailed and complex tasks, maintaining regular attendance, performing work activities without special or additional supervision, performing work activities on a consistent basis, completing a normal workday or workweek without interruptions from a psychiatric condition, accepting instructions from supervisors, interacting with coworkers and the public, and dealing with the usual stresses encountered in a competitive work environment (Exhibit 3F, pp. 7-8). This opinion was supported by the examination findings, which were generally normal other than psychometric testing with results in the borderline range, and a lack of focus and concentration upon exam. This opinion was consistent with prior administrative medical findings and a teacher questionnaire, and it was <u>somewhat persuasive as to the moderate findings. With regard to the examiner's statement that supervisors would need to allow additional time for each task to be completed and provide multiple prompts and supervision, the opinion is not well supported by essentially mild findings during the one-time examination nor the solely moderate limitations in any area of functioning. It is also not consistent with the improved functioning with medication treatment and compliance, as well as the claimant being on track for high school graduation despite decreased focus and attention by her grandmother since her stroke in May 2022</u>.  AR 28–29 (emphasis added).

Plaintiff explains the alleged deficiencies in the ALJ's reasoning as follows:

> As an initial matter, the ALJ appears to credit Dr. Roer's assessment of moderate limitations, but then he failed to formulate a residual functional capacity that adequately accounted for each area of moderate dysfunction. For instance, the ALJ restricted the duration of Plaintiff's interactions with coworkers, supervisors, and the public, which conceivably accounted for Plaintiff's moderate limitations in interacting with others, and the ALJ restricted Plaintiff to occasional workplace changes and no production rate pace, which conceivably accounted for her moderate limitations in dealing with stress (Tr. 31, 464-466). However, the ALJ did not include any limitations in Plaintiff's residual functional capacity to account for Dr. Roer's assessment that Plaintiff had moderate limitations in her ability to maintain attendance during a regular 40-hour workweek, complete a normal workday or workweek without interruptions, work on a consistent basis, or perform work activities without additional supervision (Tr. 464-466). The omission of work restrictions to account for these moderate limitations was not harmless.  MSJ at 6.

First, Plaintiff concedes that the ALJ "conceivably" accounted for moderate limitations in social interaction and stress tolerance.  MSJ at 6–7.  Absent some related discussion addressed below, the Court assumes that Plaintiff alleges no harmful error on those topics.

Nevertheless, Plaintiff contends the ALJ failed to incorporate Dr. Roer's assessment that Plaintiff had moderate limitations in maintaining attendance, completing a normal workday or workweek without interruptions, working on a consistent basis, or performing work activities

without additional supervision. MSJ at 7.

As an initial matter, applicable authority tends to suggest that "moderate" mental limitations—as opined by Dr. Doer—are not per se disabling. See, e.g. McLain v. Astrue, 2011 WL 2174895, *6 (C.D. Cal. 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"); *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

As to the ALJ's alleged failure to incorporate Dr. Roer's assessment that Plaintiff had moderate limitations in maintaining attendance, completing a normal workday or workweek without interruptions, working on a consistent basis, or performing work activities without additional supervision (MSJ at 7), Dr. Roer used qualitative metrics ("moderate"), whereas the VE used quantitative metrics as set forth in the regulations (i.e. "occasional," which, under the regulations, means 1/3 of an 8-hour day, as the VE explained). At the Hearing, Counsel[2] for Claimant articulated his belief that a "moderate" limitation as described by Dr. Roer was equivalent to "occasional" (i.e. 1/3 of an eight-hour day per SSR 83-10), but there is no basis to treat those terms as synonymous. AR 67–68.

As to absenteeism, Dr. Roer again used a qualitative description (moderate), which is difficult to quantify. However, the VE was not questioned as to the threshold number of monthly absences beyond which the Claimant would be unemployable. Further, Claimant's teacher questionnaire indicated Plaintiff did not demonstrate an unusual degree of absenteeism. AR. 308.

---

[2] Counsel who represented Plaintiff at the hearing is not the same counsel of record here.

Relevantly, it does not necessarily follow that a "moderate" limitation in ability to maintain attendance—as opined by Dr. Roer—is work preclusive, rather than being aligned with the agency's definition of that term. See Rose, 2021 WL 1612091 at *3 (explaining that "moderate" is more than a slight abnormality but the claimant can still function satisfactorily); McLain, 2011 WL 2174895 at *6 ( ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks").

As to the moderate need for additional supervision, Plaintiff explained that Dr. Roer's opinion required additional supervision through the workday, as opposed to less supervisor interaction, as set forth in the RFC. MSJ at 7. The argument is not persuasive. Dr. Roer again used a qualitative description (moderate), whereas the RFC specified no more than "occasional" supervisor interaction (AR 31), which is defined in SSR 83-10 as no more than 1/3 of an eight-hour day. Again, it does not follow that a "moderate" degree of supervisor interaction is inconsistent with 1/3 of an eight-hour day.

As to the need for increased supervision, Plaintiff explains that Hearing Counsel asked the vocational expert whether a person who requires reminders 5% of the workday to remain on tasks could perform the occupations of marker, routing clerk, and hand packager. In response, the vocational expert testified that such a person could not perform competitive work. AR 66. The administrative hearing transcript reflects the following discussion:

> Q: Thank you. If I added for hypothetical 3 that the individual would need reminders to stay on task 5% of the workday, would these jobs remain?
>
> A: I'm hesitating because 5% is not a deep reduction, somewhere in the neighborhood of, yeah, maybe every hour the person is having to be reminded to stay on task; however, reminders to stay on task are usually not affiliated with competitive work. So I would say that's actually more in keeping with sheltered work environments, not competitive.  AR 66.

First, Hearing Counsel incorrectly surmised that Dr. Roer's opinion concerning "moderate" need for additional supervision translates to 5% of the workday. Second, the VE did

not opine in so many words that the need for reminders to stay on task 5% of the workday would be work preclusive. Rather, the VE appeared to suggest that 5% is a trivial reduction, though <u>hourly</u> reminders would perhaps be work preclusive. Third, hourly reminders is not equivalent to 5% of an 8-hour work day.

Finally, Plaintiff's argument concerning supervisor interaction requires the ALJ to perform a difficult balancing act. On the one hand, Plaintiff's social anxiety limits her ability to interact with anyone in the workplace, including interaction with supervisors, hence the ALJ's limitation to occasional supervisor interaction. On the other hand, Plaintiff's concentration deficiencies and other cognitive limitations allegedly require frequent supervision to ensure she remains on task and follows instructions. Given this difficult interplay, the deferential standard of review in social security appeals regarding substantial evidence justifies upholding the ALJ's decision.

In sum, the ALJ's assessed RFC adequately incorporates Plaintiff's mental limitations, as well as Dr. Roer's opinion about the same.

### VI.  Conclusion & Order

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 13) is **DENIED**.
2. Defendant's cross motion (Doc. 15) is **GRANTED.**
3. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **July 18, 2025**         /s/ Gary S. Austin_____
                                                  UNITED STATES MAGISTRATE JUDGE\